UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————x

UNITED STATES OF AMERICA,


                    -v-                                    Docket No. 1:11- CR-486(S-1)-047(DLI)


FABIAN MIHAJ

                    Defendant.
————————————————————x


## SENTENCING MEMORANDUM
## ON BEHALF OF FABIAN MIHAJ


JAMES KOUSOUROS
Law Office of James Kousouros
260 Madison Ave, Floor 22
New York, New York 10016
(212)-532-1934
*Attorney for Fabian Mihaj*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————x

UNITED STATES OF AMERICA,


             -v-                              Docket No. 1:11- CR-486(S-1)-047(DLI)


FABIAN MIHAJ

             Defendant.
————————————————————x

## SENTENCING MEMORANDUM

**INTRODUCTION**

This memorandum is respectfully submitted on behalf of Fabian Mihaj, who is scheduled to be sentenced by Your Honor on October 1, 2013.  Mr. Mihaj was arrested on July 24, 2011 in Yonkers, New York and charged with violations of federal narcotics laws and related crimes. On April 10, 2013, Mr. Mihaj appeared before United States Magistrate Judge Joan M. Azrack and entered a plea of guilty to a lesser included offense of Count 3 of the indictment before the Court, to wit, a conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(C). The plea was entered pursuant to a plea agreement with the government which will be outlined below.

Mr. Mihaj has been in custody during the pendency of these proceedings.

This memorandum will address:

- The offense conduct and Mr. Mihaj's role therein;

- The plea agreement;

- The pre-sentence report and resultant advisory guidelines;

- 18 U.S.C. §3553 and the court's authority to render a non-guidelines sentence;

1

- Our request that the Court impose a non-guidelines sentence in this case based upon Mr. Mihaj's role in the instant offense, his personal history and his family circumstances and the government's anticipated motion for a two level reduction for Mr. Mihaj's participation in a global disposition;

- Conclusion.

### The offense conduct and Mr. Mihaj's role therein

The investigation which precipitated Mr. Mihaj's arrest commenced in 2006 and was conducted by the New York Organized Crime Drug Enforcement Strike Force in conjunction with the Drug Enforcement Administration [DEA] and Immigration and Customs Enforcement [ICE].  This was a wide ranging investigation which involved the importation of various narcotics from Mexico and other countries into the United States and the distribution thereof in the New York area.  As the investigation progressed, law enforcement was able to infiltrate the organization of one of the New York operatives and this led to the investigation which resulted in the instant indictment. Through the use of wiretaps, surveillance and other investigative methods, law enforcement pursued a marijuana distribution network with which Mr. Mihaj was involved.  Specifically, Mr. Mihaj served as a middleman between co-conspirators in New York and others in Canada who would either supply the marijuana or arrange for it to be shipped to the United States. When, and only if, transactions were successfully consummated, Mr. Mihaj would receive a commission.  Mr. Mihaj was not a direct supplier of marijuana nor was he responsible for the ultimate distribution in New York.

The government had provided the defense with a veritable wealth of discovery on a rolling basis as per the Court's directive since the inception of the prosecution. After a thorough review of the discovery, including the conversations in which Mr. Mihaj was overheard, we met with the government, reviewed the relevant intercepted conversations and other evidence, and it was agreed that Mr. Mihaj should be properly held accountable for at least 100 but less than 400 kilograms of marijuana. There are no allegations of any violence committed by Mr. Mihaj. Mr. Mihaj thus entered into a plea agreement with the government, as set forth below and attached herewith as **Exhibit A**.

2

<u>*The Plea Agreement United States Sentencing Guidelines*</u>

Mr. Mihaj entered his plea pursuant to a plea agreement with the Government. The base offense level is 26 based upon responsibility for between 100 and 400 kilograms of marijuana pursuant to U.S.S.G. §2D1.1(c)(7). A three level reduction is applied given Mr. Mihaj's timely acceptance of responsibility resulting in an adjusted offense level of 23 and an advisory sentencing range of 46-57 months. As part of the plea agreement, a further two level reduction will be recommended by the government if the conditions of a global plea disposition have been satisfied. We are informed by the government, as verified by the department of probation, that these conditions have been met and we respectfully request that the Court consider this two level reduction. This is Mr. Mihaj's only contact with the criminal justice system and he is thus in a Criminal History Category I. This would result in an adjusted offense level of 21 and an advisory sentencing range of 37-46 months.

The calculations contained in the pre-sentence report comport with the above and we respectfully request that the Court adopt these calculations as appropriate and supported by the evidence in this case. The Department of Probation has recommended the Court's acceptance of the global plea consideration and that the Court impose an incarcatory sentence of 37 months. We too ask that the Court consider a sentence at the low end of the guidelines or a non-guidelines sentence as the Court deems just and proper.

<u>*18 U.S.C. §3553 and the Court's Authority to Impose a Non-Guidelines Sentence.*</u>

As stated, *supra*, the guidelines present a sentencing range of 46-57 or 37-46 months with the two level reduction for the global disposition. While on the one hand we certainly concede that the offense conduct herein was of a serious nature, we respectfully submit that when Mr. Mihaj's role in the offense is considered in light of his personal circumstances, along with the other factors set forth in 18 U.S.C. §3553 (a), a non-guidelines sentence or one at the low end of the applicable advisory sentencing range presents a just sentence in this case. In the aftermath

of United States v. Booker, 543 U.S. 220 (2005) and its progeny, such a sentence is clearly within this Court's discretion.

In United States v. Booker, 543 U.S. 220 (2005), the United States Supreme Court held that the United States Sentencing Guidelines were unconstitutional as then applied and thus rendered the guidelines advisory. While a sentencing court is nevertheless duty bound to consider the guidelines in fashioning an appropriate sentence, they are now but one factor in the overall analysis (United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). As the Supreme Court made clear in Rita v. United States, 127 S. Ct. 2465 (2007) a non-guidelines sentence can now be predicated upon traditional departure grounds, because the Guidelines do not adequately reflect statutory considerations, or because a particular case warrants a non-guidelines sentence. See also, Kimbrough v. United States, 128 S. Ct. 558 (2007) [guidelines now serve as one factor among several courts must consider in determining an appropriate sentence]; Gall v. United States, 128 S. Ct. 588 (2007)).

This Court now has "considerable discretion in identifying the grounds that can justify a non-Guidelines sentence" (United States v. Jones, 531 F.3d 163, 168 n.5 (2d Cir. 2008) [Raggi, J.]). As Judge Raggi explained in Jones, "the district court 'may not presume' the reasonableness of the Commission's Guidelines sentencing range," and extraordinary circumstances are not required for the court to impose a non-guidelines sentence (id. at 166). The sentencing court, after first identifying the applicable guideline range, can impose a non-Guidelines sentence upon a finding of "sufficient justification" for the sentence imposed (See, Gall v. United States, *supra*, [upholding district court's sentence of probation in a case involving distribution of 10,000 pills of ecstasy with a guideline range of 30-37 months]; Kimbrough v. United States, *supra*, [upholding district court's decision to sentence defendant below the guideline range based upon court's disagreement with the then extant difference in treatment of crack and powder cocaine]; United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006)[defendant's good faith efforts to cooperate can be considered in support of a non-guidelines sentence]).

In United States v. Cavera, 550 F.3d 180 (2d Cir. 2008) the Court held that "[a] sentencing judge has a very wide latitude to decide the proper degree of punishment for an individual

4

offender *and* a particular crime.  In addition to taking into account the Guideline range, the district court must form its own view of the nature of circumstances of the offense and the history and characteristics of the defendant (id. at 188, internal quotation marks omitted).  No limitation is placed upon the information concerning a defendant's background and the conduct in issue that can be considered by the court in making its sentencing determination (Id.; See also; 18 U.S.C. §3661). Indeed it is often the collision of illegal conduct committed by an otherwise law abiding and decent individual which frames the most difficult of sentencing decisions.

While the guidelines must be consulted and considered by a sentencing court, the factors enumerated in 18 U.S.C. §3553(a) can now present the court with the latitude to determine a sentence without the preclusive constraints in pre-Booker guidelines jurisprudence. As the First Circuit recognized in United States v. Jimenez-Beltre, 440 F.3d 514, 527 (1ˢᵗ Cir. 2006) (Lipez, J. dissenting), the "guidelines are inescapably generalizations" that often "say little about the "history and characteristics of the defendant" (See also, United States v. Myers, 353 F. Supp 2d 1026 (U.S. Dist. Ct. S.D. Iowa, Pratt, DJ, 2005). And, as stated by the Sixth Circuit in United States v. Vonner, 516 F.3d 382, 392 (6ᵗʰ Cir. 2008)(*en banc*), "Booker breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the §3553 factors to the criminal defendants that come before them." In this past year, Judge Rakoff, in sentencing Rajat Gupta (11 Cr. 907 (JSR)) on a conviction, after trial, for securities violations, justified a non-guidelines sentence thusly: "[h]uman beings in their interactions with society are too complicated to be treated like commodities, and the attempt to do so can only lead to bizarre results."

These decisions universally applaud the discretion now afforded to district court judges who have "access to, and greater familiarity with, the individual case and the individual defendant" to be sentenced to make the "individualized assessment[s]" so often constrained by the once mandatory guidelines. With this discretion we can trust that "every convicted person be considered as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" (United States v Jones, 531 F.3d 163, *supra*; United States v Pepper, 131 S. Ct. 1229, 1240 (2011)). Thus,

5

while consideration of the guidelines is in order, the Court must now be guided, in the final analysis, by the all of the factors set forth in 18 U.S.C. §3553. These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for —
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines — ...
>
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

In fashioning an appropriate sentence, the overarching mandate of the sentencing court is the "parsimony principle" - to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" Section 3553 (United States v Pepper, *supra*, at 1243).

Based upon the *stare decisis* generated in the wake of the Booker decision, this Court's authority to render a non-guidelines sentence is clear. We are grateful for the Court's

6

consideration of the facts and circumstances herein and Mr. Mihaj's personal and family circumstances as well as the government's proposal for a two level reduction based upon Mr. Mihaj's participation in the global disposition involving the several defendants designated by the government. We ask the Court to note that Mr. Mihaj was prepared to accept responsibility in this matter from shortly after his arrest. We made this position clear in our early meetings with the government. Additionally we ask the Court to consider the additional hardship to both Mr. Mihaj and his family, all of whom reside in the United States, from the fact of his certain deportation upon his release.  In the final analysis, we ask that the Court consider a sentence that will address the goals of sentencing while permitting Mr. Mihaj to resume his life, as soon as the Court deems appropriate, in a law abiding manner.

We respectfully submit that there are indeed compelling mitigating factors in this case which, when applied to the necessary statutory analysis, warrant a non-guidelines sentence herein.

### Personal History, Characteristics and Family Circumstances of Fabian Mihaj.

Mr. Mihaj was born on July 2, 1980 in Albania to parents Gjeorgje and Mrie Mihaj.  Mr. Mihaj' parents currently reside in Cleveland, Ohio. Mr. Mihaj's father is employed as a delivery driver and a construction worker and his mother is employed part-time as a cook at a local restaurant.  Mr. Mihaj has two siblings, with whom Mr. Mihaj enjoys a close and supportive relationship.  His brother, Vilson Mihaj also resides in Ohio with his wife and two children. His sister, Lubline Mihaj currently lives in Michigan with her husband.

Mr. Mihaj was raised in a middle income household in Albania until the early 1990's when his father immigrated to the United States.  Prior to this Gjeorgji Mihaj was employed as an electrician and then as a police officer. Mr. Mihaj remained in Albania with his mother and siblings while his father provided financial support from the United States.  In 1999, the father sponsored the family and Mr. Mihaj immigrated to the United States.

Mr. Mihaj attended the equivalent of high school in Albania and graduated in 1995. Mr. Mihaj has been gainfully employed for his entire adult life in the construction field, first in

7

Connecticut, then in New York and finally in Cleveland, Ohio. He does not drink excessively and he does not use drugs.

For the past three years, Mr. Mihaj has been romantically involved with Ramonda Lala from Yonkers, New York. Ms. Lala is employed as a nurse manager and awaits Mr. Mihaj's release from custody so that the couple can reunite.  They have known each other since childhood and in an interview with the Department of Probation, Ms. Lala described Mr. Mihaj as "very outgoing, funny, friendly and kind to everyone" (See, PSR, page 26, ¶104). Ms. Lala remains supportive of Mr. Mihaj as the couple plan to marry upon his release.

Mr. Mihaj has the strong and loving support of his entire family and friends, many of whom have submitted letters for the Court's consideration.  We attach these letters herewith as **Exhibit B**. Mr. Mihaj's father, Gjergj Mihaj describes his son as "generous, giving and helpful. He always helped and provided for family and close friends with whatever was needed to give them a head start in a good life".  Clearly Mr. Mihaj is disappointed as he describes his angst over his son's arrest in light of his purpose in bringing his family to the United States to "prosper and set god lives for themselves". His description however, of how his son has been affected by this arrest is revelatory:

> I believe that the loss of his face value, the loss of respect in the community, as well as the freedom that he was afforded prior to this situation, may have taken a bigger effect on his mental state of mind. I am confident he will not repeat his offenses and I cannot imagine that he will ever repeat any illegal activity.  I plead you to give him a second chance.

Mri Mihaj, Mr. Mihaj's mother as well describes her son as a respectful and thoughtful young man. She too implores the Court to give him a second chance in life.  Both parents are mindful of their son's transgression and understand the reality that punishment will and should ensue. And yet, they both believe that the time Mr. Mihaj has spent incarcerated has had the necessary

8

deterrent effect and that Mr. Mihaj will emerge the inspiring and productive young man they raised if given the chance.

Since the inception of this matter, I have met mostly with Vilson Mihaj, Mr. Mihaj's brother, who resides in Michigan with his wife and children. Vilson cares deeply for his brother and has driven from Michigan to New York to attend almost all court hearings in this case. As he works and cannot afford to take many days off, he would often drive through the night only to return to Michigan after court hearings in order to avoid missing more than one day. While he could certainly call the undersigned and learn of the status of the case and the proceedings, Vilson would insist that his brother Fabian see him in court and know how much his brother cares for him. Vilson periodically drives to New York to visit Fabian as well. Vilson has also submitted a letter for Your Honor's consideration in which he relates how close the brothers and family are:

> My brother has and will always play an important role in my life; I was taken aback when I heard of the charges filed against him. We experienced many of life's difficulties and conquered them together from our countries economic struggles to family hardship. Our common moral family values always gave us each other to lean on.

Vilson Mihaj is convinced that his brother fell prey to negative influences and that if given the chance, Fabian will "set his life back on track". He too has witnessed his brother's remorse and relates that he "honestly believe[s] this occurrence opened his eyes and made him realize the true value of life".

In addition to these letters, we attach herewith letters from:

Mark Mihaj:  uncle

Mario Mihaj: uncle

Shaqe Stakaj: uncle

9

Kristina Martinaj: cousin by marriage

Klaudio Martinaj: cousin

Ndue Martinaj: cousin

Antonio Lulgjuraj: cousin by marriage

Vitore Bacaj: aunt

███████████ niece

In all of these letters, Fabian Mihaj is described as a fun loving and respectful child who grew into a devoted family member always willing to assist his family and friends in their time of need. There is little question but that Mr. Mihaj was raised in a family that overcame much adversity and hardship as they immigrated from Albania to the United States and it is equally clear that they have been collectively guided by a strong work ethic and moral compass. All of these family members (except for young █████) make clear that they are aware of Mr. Mihaj's transgression and how deeply ashamed and saddened they were to hear of his arrest. While they all believe that Mr. Mihaj was influenced by others, they all recognize that it was his choices which brought him to the Court for sentencing. And yet they are all certain that Mr. Mihaj is extremely remorseful and will be a productive citizen upon his release.

We respectfully submit that this strong family support speaks volumes of how positive an influence Mr. Mihaj can be to others and that he has a strong support system to return to upon his release. We ask the court to consider Mr. Mihaj's family circumstances and personal background in determining the appropriate sentence to be imposed.

We also respectfully request that the Court consider that Mr. Mihaj will be deported upon serving his sentence in this case. As indicated in the PSR, Mr. Mihaj entered the United States legally, however may be subject to deportation proceedings as a result of this conviction. While his family remains supportive of him, there is a significant likelihood, indeed a certainty, that Mr. Mihaj will be deported to Albania upon his release. Given the fact that his entire

10

family resides in the United States and has lived here for close to fifteen years, this separation will be devastating to his elderly parents and to his siblings. While Ms. Lala is intent on continuing her relationship with Mr. Mihaj upon his release, his deportation will certainly complicate these plans. While we fully recognize that Mr. Mihaj bears responsibility for this, his impending separation from his family is certainly a tragic collateral consequence, apart from his incarceration, which the Court can consider in determining the just and fair punishment in this case. We respectfully request that the Court grant this consideration.

## *Conclusion*

At 38 years of age, Mr. Mihaj will stand before Your Honor for sentencing on his only criminal conviction. While his role in this matter was no insignificant, he was more of a middleman earning sporadic commissions. He has otherwise been a devoted family member who will now suffer not only continued incarcerated but permanent separation from his loved ones. Fabian Mihaj has accepted responsibility for his conduct in this case and has suffered tremendously for the pain and turmoil he has foisted upon his family. While there can be no dispute as to the severity of the offense and the need for a pointed and unequivocal message to those otherwise disposed to such conduct, this is a defendant for whom, we respectfully submit, a significant prison sentence is not necessary to achieve the goals of punishment delineated in §3553. Mr. Mihaj was prepared to accept responsibility for his conduct from early on and has been prepared to put this event behind him knowing that he would have to serve a sentence for the crime he committed. Mr. Mihaj is extremely remorseful for his conduct and assures this Court, as he has assured his family, that he will never re-offend again. While he is truly concerned for his future given his certain deportation upon his release, Mr. Mihaj is ready to resume a law abiding life and hopes to one day start a family with Ms. Lala.

Based upon the foregoing, we ask the Court to consider the factors enumerated in 18 U.S.C. §3553 and those raised herein as they relate to Mr. Mihaj and to impose a sentence which to this Court is just and proper.

Thank you for your courtesy and consideration.

11

Dated: September 16, 2013

       New York, New York

                                 Respectfully Submitted,

                                 _____/s/_____

                                 JAMES KOUSOUROS

cc:    Steven Lawrence Tiscione
       Assistant United States Attorney

       Patricia A. Sullivan
       United States Probation Officer

       Fabian Mihaj

12